**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

|  |  |
|---|---|
| **ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS, INC**, *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JULIE SU**, *et al.,* <br><br> **Defendants.** | **CASE NO. 23-CV-00396-MJT** |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

John Harper, III
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
(713) 951-9400
ajharper@littler.com

Maurice Baskin (*pro hac vice*)
Alex MacDonald (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
amacdonald@littler.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

Page

MOTION FOR SUMMARY JUDGMENT……………………………………………1

I.      FACTS SUPPORTING SUMMARY JUDGMENT ........................................ 2

     A.      The Department's Previous Enforcement of the Davis–Bacon Act ..................... 2

     B.      The Department's 2022 Rulemaking Proceeding ................................... 5

     C.      The Department's Final Rule................................................. 6

     D.      Undisputed Facts Demonstrating Plaintiffs' Standing to Sue .............................. 8

II.     JURISDICTION AND VENUE ............................................... 11

III.    STATEMENT OF THE ISSUE ............................................... 12

IV.     STANDARD OF REVIEW OF AGENCY ACTION ................................... 12

VI.     ARGUMENT ............................................................ 13

     A.      The Department's Changes to the Wage Determination Process Violate
          the DBA and the APA's Arbitrary and Capricious Test..................................... 13

          1.      The Department's Re-Definition of "Prevailing Wage" Violates
               the Plain Language of the DBA .............................................. 13

          2.      Reinstating the 30 Percent Rule Is Arbitrary and Capricious ................. 15

          3.      The Department's Conflation of Urban and Rural Rates Violates
               the DBA and Is Arbitrary and Capricious............................................. 18

     B.      The Rule Unlawfully and Arbitrarily Expands the DBA'S Coverage and
          Penalties ................................................................... 19

          1.      The Rule's Imposition of Coverage by "Operation of Law"
               Violates the DBA ................................................. 19

          2.      The Department's Rule Unlawfully Expands the Scope of the
               DBA's Coverage Beyond "Construction" Performed by "Laborers
               and Mechanics" on the "Site of the Work"............................................ 21

     C.      The Rule Imposes Restrictive and Discriminatory Treatment of Non-
          Union Fringe Benefit Plans....................................................... 24

i

D.    The Rule Violates the Regulatory Flexibility Act and the APA ......................... 25

E.    The Rule's Unlawful Provisions Cannot be Severed ............................................ 27

F.    Acting Secretary Su's Indefinite Appointment as Acting Secretary of
      Labor Violates the Appointments Clause of the Constitution ............................ 28

V.    CONCLUSION ............................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Biden*,
    70 F.4th 817 (5th Cir. 2023) .................................................13

*Abhe & Svoboda, Inc. v. Chao*,
    508 F.3d 1052 (D.C. Cir. 2007) ..............................................11

*Alfa Int'l Seafood v. Ross*,
    264 F. Supp. 3d 23 (D.D.C. 2017) ...........................................12

*Associated Builders & Contractors of SE. Texas v. Rung*,
    No. 1:16-CV-425, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016) ...........10

*Associated Fisheries of Me., Inc. v. Doley*,
    127 F.3d 104 (1st Cir. 1997) ..............................................25, 27

*Associated Gen. Contractors of Am. v. U.S. Dep't of Lab.*,
    No. 5:23-CV-0272-C, 2024 WL 3635540 (N.D. Tex. June 24, 2024), *appeal
    filed*, 24-10790 (5th Cir. Aug. 28, 2024) ...........................9, 11, 12, 20, 21, 23, 25, 26

*Ball, Ball & Brosamer, Inc. v. Reich*,
    24 F.3d 1447 (D.C. Cir. 1994) ..............................................21, 22

*Texas v. Becerra*,
    No. 5:21-CV-300-H, 2023 WL 2754350 (N.D. Tex. Mar. 31, 2023)...............27, 28

*Bldg. & Const. Trades' Dep't, AFL-CIO v. Donovan*,
    712 F.2d 611 (D.C. Cir. 1983) ..............................................2, 4, 14, 18

*Bldg. & Const. Trades Dep't AFL-CIO v. U.S. Dep't of Labor Wage Appeals Bd.
(Midway)*,
    932 F.2d 985 (D.C. Cir. 1991) ..............................................21, 22

*Bullock v. U.S. Bureau of Land Mgmt.*,
    489 F. Supp. 3d 1112 (D. Mont. 2020)......................................2, 28, 29

*Chamber of Comm. of United States v. United States Dep't of Lab.*,
    885 F.3d 360 (5th Cir. 2018) ..............................................28

*Coalition for Workforce Innovation v. Walsh*,
    2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022)....................12, 17

*District of Columbia v. Dep't of Labor*,
    819 F.3d 444 (D.C. Cir. 2016) ..............................................13, 15, 21

*Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) .................................................................................................13

*Encino Motorcars v. Navarro*,
    579 U.S. 211 (2016) ....................................................................................................13

*Ohio v. EPA*,
    144 S. Ct. 2040 (2024) ...............................................................................13, 17, 26, 27

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ....................................................................................................24

*G.L. Christian & Assoc. v. United States*,
    312 F.2d 418 (Ct. Cl. 1963) ........................................................................................20

*Gutierrez-Brizuela v. Lynch*,
    834 F.3d 1442 (10th Cir. 2016) ...................................................................................15

*H.B. Zachry v. United States*,
    344 F.2d 352 (Ct. Cl. 1965) ........................................................................................22

*Hudson Inst. of Process Rsch. Inc. v. NLRB*,
    No. 23-60175, 2024 WL 4222177 (5th Cir. Sept. 18, 2024) ......................................13

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977) ......................................................................................................9

*L.P. Cavett Co. v. U.S. Dep't of Labor*,
    101 F.3d 1111 (6th Cir. 1996) ...............................................................................21, 22

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ...........................................................................................12, 15

*Lucia v. SEC*,
    585 U.S. 237 (2018) ....................................................................................................29

*Mayfield v. U.S. Dep't of Lab.*,
    No. 23-50724, 2024 WL 4142760 (5th Cir. Sept. 11, 2024) ......................................12

*Mistick Construction*,
    ARB No. 04-051, 2006 WL 861357 (Mar. 31, 2006) ............................................16, 19

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ......................................................................................2, 13, 15, 16

*Nio v. United States*,
    385 F. Supp. 3d 44 (D.D.C. 2019) ..............................................................................28

*Noel Canning v. NLRB,*
  573 U.S. 513 (2014)................................................................................................28

*Sierra Club v. U.S. Env. Prot. Agency,*
  939 F.3d 649 (5th Cir. 2019) ...............................................................................15

*Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.,*
  587 F. Supp. 3d 528 (E.D. Tex. 2022)..............................................................2, 12

*Texas Ass'n of Manufacturers v. United States Consumer Prod. Safety Comm'n,*
  989 F.3d 368 (5th Cir. 2021) ..............................................................................9, 12

*U.S. Cellular Corp. v. FCC,*
  254 F.3d 78 (D.C. Cir. 2001)................................................................................25

*Univ. Research Assoc., Inc. v. Coutu,*
  450 U.S. 754 (1981)...........................................................................................11, 20

*Wages & White Lion Invs., L.L.C. v. Food & Drug Admin.,*
  90 F.4th 357 (5th Cir.) ..........................................................................................24

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 551-559 .............................1, 8, 11, 12, 15, 18, 25, 27

5 U.S.C.
  § 604(a)(3) ...................................................................................................25, 26, 27
  § 701...........................................................................................................1, 11, 12
  § 706(2)(A) ............................................................................................................27
  § 706(2)(B)............................................................................................................29

28 U.S.C.
  § 1331..................................................................................................................11
  § 1391(e) .............................................................................................................12
  § 2201..................................................................................................................12

29 U.S.C. § 552.....................................................................................................29

Davis-Bacon Act, 40 U.S.C.
  §§ 3141 *et seq* .................1, 2, 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 23, 26, 27

Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* ..........................................1, 11

Small Business Regulatory Enforcement Fairness Act, 5 U.S.C. §§ 601 *et seq* .............1, 8, 12, 25

## Other Authorities

29 C.F.R.
    § 1.7(b) .......................................................................................................18, 19
    § 5.1(a) ............................................................................................................3
    § 656.40(b)(2) ...............................................................................................16

American Heritage Dictionary (4th ed. 2001) ...........................................................14

Comments on Notice of Proposed Rulemaking, Updating the Davis – Bacon and
    Related Acts Regulations, Americans for Prosperity (Mary 17, 2022),
    https://americansforprosperity.org/wp-content/uploads/2022/06/2022.05.17-
    AFPF-I4AW-Reg-Comment-re-Davis-Bacon-Act-NPRM.pdf ...............................5

Comments re: Updating the Davis Bacon and Related Acts Regulations, Office of
    Advocacy, U.S. Small Business Administration (March 17, 2022),
    https://www.regulations.gov/comment/WHD2022-0001-40925; ...........................5

Comp. Gen. Rep. No. HRD 79-18 (April 27, 1979) .................................................4, 14

Determination of Wage Rates Under the Davis-Bacon & Serv. Cont. Acts, 5 U.S.
    Op. Off. Legal Counsel 174 (1981) .................................................................14, 16

Herbert R. Northrup *et al.*, George Mason Univ. John M. Olin Inst. For Emp.
    Practice & Pol'y, *Construction Union Tactics to Regain Jobs and Public
    Policy* 10–11 (2008) .........................................................................................3

Ill. Road & Transp. Builders Ass'n (May 14, 2022), available at
    https://www.regulations.gov/comment/WHD-2022-0001-40894 ...........................23

James Sherk, Labor Department Can Create Jobs by Calculating Davis–Bacon
    Rates More Accurately 4 (2017)
    https://www.heritage.org/sites/default/files/2017-01/BG3185_0.pdf....................17

Jeff Grabelsky, *Building and Construction Trades Unions: Are They Built to Win?*
    Social Policy, Winter 2004 ................................................................................3

Letter from the Competitive Enterprise Institute Opposing the Department of
    Labor's Proposed Changes to the Davis–Bacon Act, Competitive Enter. Inst.
    (May 17, 2022), https://cei.org/wp-content/uploads/2022/05/CEI-Letter-on-
    Davis-Bacon-Proposal.pdf ................................................................................5

Merriam-Webster, Webster's Collegiate Dictionary (5th ed. 1936).............................14

Op. No. B-144901, 40 Comp. Gen. 565, 570, 1961 WL 1636, at *6 (Apr. 10,
    1961) ..............................................................................................................20

Oxford English Dictionary 1334 (1933) .................................................................14

*Prevailing Wages*, https://flag.dol.gov/programs/prevailingwages ................................................16

Procedure for Predetermination of Wage Rates, 46 Fed. Reg. 41444 (Aug. 14, 1981) ....................................................................................................................16

Procedure for Predetermination of Wage Rates, 47 Fed. Reg. 23644 (May 28, 1982) ....................................................................................14, 16, 18, 19

U.S. Census County Business Patterns by Legal Form of Organization and Employment Size Class for the U.S., States and Selected Geographies: 2021, https://data.census.gov/table/CBP2021.CB2100CBP?q=CBP2021.CB2100CB P&hidePreview=true ..........................................................................................9

U.S. Const. art. II §2 ....................................................................................2, 28

U.S. Govt. Accountability Office, Davis–Bacon Act: Methodological Changes Needed to Improve Wage Survey 19 (2011) ........................................17

Updating the Davis–Bacon and Related Acts Regulations Final Rule, 88 Fed. Reg. 57526 (Aug. 23, 2023)..1, 2, 3, 4, 5, 6, 7, 10, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 29

*Updating the Davis-Bacon and Related Acts Regulations (NPRM)*, 87 Fed. Reg. 15698 (Mar. 18, 2022) ..............................................................................5

Webster's New Twentieth Century Dictionary (1951)................................................14

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS, INC. ("ABCSETX"), and ASSOCIATED BUILDERS AND CONTRACTORS, INC. ("ABC") (collectively "Plaintiffs"), by and through their undersigned counsel, hereby move for summary judgment. The grounds for this motion are that the U.S. Department of Labor ("Department") has promulgated a rule that violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 500–596, 701–706; the Davis–Bacon Act ("DBA"), 40 U.S.C. § 3141–3148; the Small Business Regulatory Enforcement Fairness Act (SBREFA), 5 U.S.C. § 601–613; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Rule is entitled "Updating the Davis–Bacon and Related Acts Regulations Final Rule" (hereafter the "Rule"), 88 Fed. Reg. 57526 (August 23, 2023).

Far from "updating" the Department's enforcement of the DBA, the Rule instead returns to failed policies of the 1970s, rescinding important reforms that were kept in place for 40 years by six different administrations on a bi-partisan basis. The Rule also improperly departs from authoritative judicial interpretations of the DBA, ignores many of Plaintiffs' comments in the Administrative Record, and seeks unlawfully to expand the Act's coverage and enforcement provisions, to the detriment of Plaintiffs' members in this District and nationally.

In addition to violating the Act's plain language, the Rule rewrites many of the Department's longstanding policies in an arbitrary and capricious manner, in violation of the APA and SBREFA. The Department has failed to consider important aspects of the problems it purports to address and has offered explanations for its new rules that run counter to the evidence. The Department has also relied on factors that it should not have considered, while failing to consider reasonable alternatives, ignoring longstanding reliance interests of the regulated construction industry, and grossly underestimating the adverse impact on small and disadvantaged businesses. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-

1

43 (1983). *See also Associated Gen. Contractors of Am. v. U.S. Dep't of Lab.*, No. 5:23-CV-0272-C, 2024 WL 3635540 (N.D. Tex. June 24, 2024), *appeal filed*, 24-10790 (5th Cir. Aug. 28, 2024) (preliminarily enjoining portions of the same Rule nationwide).

The Rule was also issued under the authority of an improperly appointed official, Deputy Secretary of Labor Julie Su, who purports to continue acting indefinitely as Secretary of Labor, without the constitutionally required advice and consent of the Senate. The Rule is invalid on that independent ground. *See* U.S. Const. art. II §2; *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1124 (D. Mont. 2020).

## I.    FACTS SUPPORTING SUMMARY JUDGMENT[1]

### A.    The Department's Previous Enforcement of the Davis–Bacon Act

1.    The Davis–Bacon Act was enacted in 1931 and subsequently extended more than 70 related acts funding government construction projects, for the purpose of protecting local wages on government construction projects from suppression by non-local contractors. *See, e.g.*, 40 U.S.C. § 3142; *Bldg. & Const. Trades' Dep't, AFL-CIO v. Donovan*, 712 F.2d 611, 613–14 (D.C. Cir. 1983) (citing S. Rep. 332, 74th Cong., 1st Sess. pt. 2, at 4 (1935)). 88 Fed. Reg. at 57526.

2.    As subsequently amended, the Davis–Bacon Act requires that the "advertised specifications for every contract in excess of $2,000 to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works . . . which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid various

---

[1]    The facts set forth below are primarily taken from the Administrative Record ("AR") of the Department's rulemaking proceeding, as certified by Defendants. ECF 18. Plaintiffs further rely on affidavits outside the AR to establish their standing arising from the Rule. *See* Exhibits 2-9. *See Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 538–39 (E.D. Tex. 2022) (relying on affidavits to establish plaintiffs' standing).

classes of laborers and mechanics." 40 U.S.C. § 3142(a). The 71 Related Acts extend the DBA's requirements to federally funded construction projects. *See, e.g.*, the Federal–Aid Highway Acts, the Housing and Community Development Act, the CHIPs Act, and others.[2] 88 Fed. Reg. at 57526, 57598.

3.       The DBA further mandates that the minimum wages specified above "shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3142(b). Every covered contract as defined above must stipulate that "the contractor or subcontractor shall pay all mechanics and laborers employed directly on the site of the work . . . the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications." *Id*. § 3142(c);  88 Fed. Reg. at 57529–30.

4.       During the early years of the Davis–Bacon Act's enforcement, construction unions controlled a supermajority of skilled trades in performing construction work in many parts of the country. Ex. 1, ABC Comments at 7–8;[3] Herbert R. Northrup *et al.*, George Mason Univ. John M. Olin Inst. For Emp. Practice & Pol'y, *Construction Union Tactics to Regain Jobs and Public Policy* 10–11 (2008); Jeff Grabelsky, *Building and Construction Trades Unions: Are They Built to Win?* Social Policy, Winter 2004, at 35. In subsequent decades, however, the unions' market share in the construction industry declined precipitously. As reported by the Department's own

---

[2]       A full list of the Related Acts can be found at 29 C.F.R. Part 5, Subpart A <u>eCFR :: 29 CFR Part 5 Subpart A -- Davis-Bacon and Related Acts Provisions and Procedures</u>.

[3]       Defendants' AR Index directs the reader in search of the AR comments to the rulemaking docket at <u>www.regulations.gov</u>. *See* ECF 18-2, Index at 44. For ease of reference, ABC's extensive comments in opposition to the NPRM are attached hereto as Exhibit 1. *See also* <u>http://www.regulations.gov/WHD-2022-001-40849</u> [hereafter "ABC Comments"].

Bureau of Labor Statistics (BLS), the percentage of workers covered by union agreements fell to 35 percent by 1980 and currently stands at 11 percent. ABC Comments at 7–8. [4]

5.      In 1979, the General Accounting Office (GAO) (subsequently renamed the Government Accountability Office) published a report titled "The Davis-Bacon Act Should be Repealed." Comp. Gen. Rep. No. HRD 79-18 (April 27, 1979). Among other criticisms, the GAO found that "after nearly 50 years the Department of Labor has not developed an effective program to issue and maintain current and accurate wage determinations . . . ." GAO also reported that the Department's enforcement "result[ed] in unnecessary construction and administrative costs" and "ha[d] an inflationary effect on the areas covered by inaccurate wage rates and the economy as a whole." *Id.*; cited in ABC Comments at 9. *See also* 88 Fed. Reg. at 57540–41.

6.      In response to the GAO report and other critics, the Reagan Administration issued regulations reforming the Department's wage-determination process, including (1) setting a 50 percent threshold for how much of the workforce must be paid a single wage for that wage to become the "prevailing wage" (previously set at 30 percent); (2) restricting the importation of urban rates for projects in rural areas; and (3) limiting the use of wages paid on other covered federal projects in the determination of prevailing rates. These regulations were approved by the D.C. Circuit as consistent with the statutory definition of "prevailing" wages in *Building and Construction Trades' Department, AFL-CIO v. Donovan*, 712 F.2d 611 (D.C. Cir. 1983). 88 Fed. Reg. at 57540–41, 57545–46.

7.      Even with these reforms, the Department's wage survey process has continued to overstate the extent to which union wage rates "prevail" in wage determinations. Though union market share nationally has fallen to 11 percent, union rates have been found to "prevail" in a

---

[4]*See*https://www.bls.gov/news.release/union2.t03.htm;
https://www.unionstats.com/members/htm/members_priv_const.htm.

disproportionate share of the Department's wage determinations. *See* 88 Fed. Reg. at 57546. This anomaly has arisen because the Department has refused to apply scientific wage survey methods long used by the Department's own Bureau of Labor Statistics. ABC Comments at 7–8.

### B.    The Department's 2022 Rulemaking Proceeding

8.    On March 18, 2022, the Department published a Notice of Proposed Rulemaking entitled Updating the Davis-Bacon and Related Acts Regulations, 87 Fed. Reg. 15698 (Mar. 18, 2022) ("Proposed Rule"). The Proposed Rule sought to make "comprehensive" changes to existing DBA regulations regarding how the Department determines, mandates, and enforces prevailing wages on all covered contracts.

9.    Belying the pretense that the Proposed Rule intended to "update" the Department's enforcement of the DBA, the revisions in large part reverted to failed policies reformed by the Reagan Administration or overturned by court decisions. 87 Fed. Reg. at 15698. *See* ABC Comments at 10–11, 37–38, 43, 47.

10.    As noted above, Plaintiff ABC and its members filed detailed comments opposing the proposed rule revisions. Ex. 1. Nearly 41,000 other comments were filed as well, many of which opposed the changes as violating the Davis–Bacon Act, failing to consider reasonable alternatives, failing to justify the changes, and failing to assess the harm to small businesses.[5]

---

[5]    *See, e.g.*, Ex. 2–9 (affidavits of members). *See also* Comments filed by Office of Advocacy, U.S. Small Business Administration (March 17, 2022), https://www.regulations.gov/comment/WHD2022-0001-40925; Letter from the Competitive Enterprise Institute Opposing the Department of Labor's Proposed Changes to the Davis–Bacon Act, Competitive Enter. Inst. (May 17, 2022), https://cei.org/wp-content/uploads/2022/05/CEI-Letter-on-Davis-Bacon-Proposal.pdf; Comments on Notice of Proposed Rulemaking, Updating the Davis – Bacon and Related Acts Regulations, Americans for Prosperity (May 17, 2022), https://americansforprosperity.org/wp-content/uploads/2022/06/2022.05.17-AFPF-I4AW-Reg-Comment-re-Davis-Bacon-Act-NPRM.pdf.

C.      **The Department's Final Rule**

11.      On August 23, 2023, the Department published its final Rule in the Federal Register. *See* "Updating the Davis-Bacon and Related Acts Regulations," 88 Fed. Reg. 57526 (Aug. 23, 2023). With limited exceptions, the Rule adopted the Proposed Rule's flawed mandates.

12.      Specifically, the Rule incorporated the Proposed Rule's 30-percent standard. 88 Fed. Reg. at 57723. That standard allows the Department to establish as the "prevailing wage" any single wage paid to at least 30 percent of the covered workers whose wages are voluntarily reported in a given civil division (usually a county), reinstating a definition of "prevailing" previously rejected by the Department itself and by the D.C. Circuit in *Donovan, supra*.

13.      Under the new Rule, the Department will use a weighted average to set the prevailing wage only when no single wage is paid to a mere three out of ten reported workers, a rate that is by definition different from and typically higher than that paid to 70 percent of the local workforce. *See* 88 Fed. Reg. at 57723. The Department itself acknowledges that (unrepresentative) union rates will now be used to set the prevailing rate in nearly twice as many cases as under the previous rule. *See* 88 Fed. Reg. at 57533, 57710.

14.      The Rule likewise changes the Department's approach to calculating prevailing wages in urban and rural counties. Under the 1982 regulations, the Department declared that it would not combine data from urban and rural counties. But now the Rule abandons that common-sense approach and allows the Department to conflate urban and rural responses, as well as data from remote locations with different wage conditions. *See* Fed. Reg. at 57562.

15.      The Rule rejected numerous proposed alternatives to the Department's unscientific and much-criticized wage survey process, most prominently ABC's proposal (shared by others) that the Department adopt the scientifically gathered wage data - or at least the methods - of the BLS. 88 Fed. Reg. at 57576; *see also* ABC Comments at 23–36.  Instead, the Department adopted

6

only BLS's "indexing" data, resulting in unwarranted increases in non-union wage determinations. 88 Fed. Reg. at 57574–75.

16.    The Rule also now incorporates wage determinations made under certain state laws. By including rates calculated under these laws, the Rule skews Davis–Bacon rates even further from the wages actually paid to most workers.  *See* 88 Fed. Reg. at 57558–59.

17.    Similarly, the Rule expands the regulations to cover new workers and activities. For example, the Rule now redefines "construction" by including certain forms of "transportation" between worksites (newly termed "primary" and "secondary" worksites). The Rule also covers new workers, including certain surveyors, truckers, and certain workers engaged away from the construction worksite, as well as to certain "green energy" construction projects (e.g., weatherization).  *See* 88 Fed. Reg. at 57733, 57597–98.

18.    The Rule also purports to impose coverage on contracts in which no DBA stipulations are included. That is, under the Rule, a contract no longer has to state that it includes a prevailing wage or any other DBA requirement, notwithstanding the plain language of the Act requiring such contractual stipulations. Instead, those requirements will now be imposed "by operation of law," without notice to contractors or subcontractors. *See* 88 Fed. Reg. at 57662. And at the same time, the Rule unlawfully imposes a new debarment standard against contractors and subcontractors who violate the 71 Related Acts. *See* 88 Fed. Reg. 57683, revising section 5.12.

19.    The Rule also discriminates against non-union fringe benefit programs, requiring that some of them be specially approved the Wage Hour Administrator and reducing the credit allowed for such benefits. 88 Fed. Reg. at 57645–48.

20.    Each of these and other changes identified in ABC's attached comments is unlawful. The Rule does nothing to advance the DBA's goal of protecting prevailing local wages.

Instead, the Rule substitutes inflated wages for prevailing ones. The Rule thus violates the plain language of the DBA and is unlawful, arbitrary, and capricious in violation of the APA and SBREFA, as further explained below. *See* ABC Comments at 9.

**D.    Undisputed Facts Demonstrating Plaintiffs' Standing to Sue**

21.    Plaintiff ABCSETX is a non-profit trade association of construction-industry contractors and related firms operating in Southeast Texas and around the country. Headquartered within this judicial district at 2700 Twin City Highway, Nederland, Texas, ABCSETX is a separately incorporated affiliate of the national construction industry trade association Plaintiff ABC. Plaintiff ABC represents more than 22,000 member contractors and related firms both in Texas and throughout the country, who share the mission of ensuring that work in their industry should be awarded and performed based on merit, without regard to labor affiliation. ABC Comments at 1–2; Gimler Aff. ¶¶ 1, 4; Brubeck Aff. ¶¶ 4–5.

22.    ABC members won 55 percent of the $147 billion in direct prime construction contracts exceeding $25 million awarded by federal agencies during fiscal years 2009-2022, all covered by the DBA.[6] In addition, ABC members perform billions of dollars of construction on federally assisted projects covered by the 70+ "Related Acts" and are engaged in performing private work covered by the Inflation Reduction Act, which also incorporates DBA prevailing wage requirements. ABC Comments at 1–2; Brubeck Aff. ¶ 4; Gimler Aff. ¶ 4.

24.    While some of ABC's members are among the largest contractors in the country, most are small businesses. That makeup is consistent with the findings of the U.S. Small Business Administration's Office of Advocacy, which has reported that the construction industry has one of

---

[6]    Data Source: FY2022 Prime United States NAICS 23 Contracts Greater Than or Equal to $25M, data from USASpending.gov (accessed 1/13/23) and cross-referenced with ABC Membership Database annual report (created 12/20/22). *See* ABC Comments at 1-2.

the highest concentrations of small businesses in the economy.[7] ABC Comments 1–2; Brubeck Aff. ¶ 4; Gimler Aff. ¶ 4.

25.    The Rule frustrates Plaintiffs' organizational mission and is causing Plaintiffs to divert their resources to deal with the Department's inflationary and arbitrary wage determinations, as well as the improper expansion of the Act's coverage, and the Department's failure to provide adequate guidance to ABC-member contractors performing government-funded construction work. Brubeck Aff. ¶¶ 1–5; Gimler Aff. ¶¶ 1–4.

26.    In addition to direct organizational harm incurred by ABC and ABCSETX on their own behalf, Plaintiffs are also harmed by the Rule in their representative capacity as trade associations representing construction contractors in Texas and all over the country who bid on and perform government-funded construction projects covered by the Davis–Bacon Act and the Rule. Plaintiffs each have standing to bring this action on behalf of their members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members. Brubeck Aff. ¶ 9; Gimler Aff. ¶¶ 5–9; *see also Texas Ass'n of Manufacturers v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 380 (5th Cir. 2021) (finding that trade association had standing to challenge rule on behalf of its members); *Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *5, 9-10 (finding construction contractor association has standing to challenge this same Davis-Bacon Rule); *Associated Builders & Contractors of SE. Texas v. Rung*,

---

[7]    U.S. Census County Business Patterns by Legal Form of Organization and Employment Size Class for the U.S., States and Selected Geographies: 2021, https://data.census.gov/table/CBP2021.CB2100CBP?q=CBP2021.CB2100CBP&hidePreview=true.

No. 1:16-CV-425, 2016 WL 8188655, at *6 (E.D. Tex. Oct. 24, 2016) (finding that ABC had standing to challenge Labor Department regulations impacting ABC's members on government contracts).

27.    Attached to this motion are affidavits from identified ABC members—presented as examples of many more ABC member contractors and subcontractors who are directly harmed by the Department's new Rule. Ex. 2–9. Among other harms caused by the Rule to ABCSETX's members located in Texas, and to ABC's nationwide members, the Rule will subject ABC-member contractors to increased administration costs, compliance costs and risks, force them to adopt government-determined wages and benefits rates that are inflated above their locally prevailing wage and benefit rates, and undermine ABC-member contractors' most efficient use of skilled labor. Brubeck Aff. ¶¶ 5–9; Gimler Aff. ¶¶ 4–9; ABC Member Affs. *passim*.

28.    More specifically, virtually every aspect of the Rule's revisions harms non-union contractors by imposing union wage rates and – most importantly - union jurisdictional rules on government-funded procurements, even though 89 percent of the U.S. construction workforce, including ABC members' workforces, perform their construction on a nonunion or "merit" basis. The Rule will thereby impose hidden union classification rules and work practices on ABC-member nonunion contractors, under the so-called "*Fry Brothers*" standard referenced repeatedly in the Rule.[8] Brubeck Aff. ¶ 9; Gimler Aff. ¶ 6; ABC Member Affs.

29.    Equally harmful are the Rule's expansion of coverage to include types of workers and work locations beyond construction laborers and mechanics at the site of the work. The Rule offers little or no guidance as to how the new provisions will be enforced, thereby increasing the

---

[8]    *Fry Brothers, Inc.*, WAB 76-1 (1976); discussed throughout the Rule at 88 Fed. Reg. 57551-55, 57592-95.

administrative burdens and risks to ABC's non-union contractor members. Brubeck Aff. ¶ 10; Gimler Aff. ¶ 7; ABC Member Affs. *passim*.

30.    Also directly harmful to ABC members are the new enforcement provisions of the Rule, further discussed below, which among other things will for the first time purport to impose liability on contractors and subcontractors without regard to the existence of Davis-Bacon contract stipulations, i.e., by "operation of law." The Rule also purports to authorize the Department to "cross-withhold" alleged back payments from contractors on projects other than those where violations have been found to occur departing from statutory authority and decades of enforcement policy. Brubeck Aff. ¶ 12; Gimler Aff. ¶ 8; ABC member Affs. *passim*.

31.    This is not an exclusive list of harms imposed by the Rule on Plaintiffs and their members in Texas and around the country. Plaintiffs incorporate by reference ABC's comments and the attached affidavits, and the numerous other opposing comments in the AR.[9]

## II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question) because the Plaintiffs' causes of action arise under and allege violations of federal law, including the APA, 5 U.S.C. §§ 701–06 (APA jurisdiction to review agency actions); the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (declaratory relief); the DBA, 40 U.S.C. § 3141–3148; and the United States Constitution. *See Univ. Research Assoc., Inc. v. Coutu*, 450 U.S. 754, 761, n.10 (1981), and cases cited therein; *see also Abhe & Svoboda, Inc. v. Chao*, 508

---

[9]    Some of the foregoing challenged provisions have already been preliminarily enjoined on a nationwide basis by the district court in *Associated Gen. Contractors of Am.*, 2024 WL 3635540, *appeal pending*. (Specifically enjoining Section 5.2's revised definition of "construction" referencing "onsite activities"; 5.2's revised definition of "material supplier"; and 5.5(e)'s "incorporation by operation of law" provision). That injunction is controlling here, but until a final decision is reached in that case, ABC's members remain at risk of harm from these provisions, along with the other rule changes not addressed in the *AGC* case.

F.3d 1052, 1058 (D.C. Cir. 2007), and additional cases cited therein, finding jurisdiction to review DOL's enforcement and implementation of the DBA.

Both the Administrative Record and Plaintiffs' attached affidavits satisfy conclusively the jurisdictional requirements of standing, as set forth above. *See Texas Ass'n of Manufacturers*, 989 F.3d at 380; *Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *5, 9-10. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–02 and the provisions of the APA, 5 U.S.C. §§ 701–06. Finally, venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because one of the Plaintiffs and many members represented by Plaintiffs are based within the judicial district of this Court.

## III.    STATEMENT OF THE ISSUE

Whether the Department violated the DBA, APA, SBREFA, and/or the U.S. Constitution in promulgating the Rule.

## IV.    STANDARD OF REVIEW OF AGENCY ACTION

This is a challenge to an agency rulemaking, to which the usual standards of FRCP 56 "do not apply." *Coalition for Workforce Innovation v. Walsh*, 2022 U.S. Dist. LEXIS 68401, *7 (E.D. Tex. Mar. 14, 2022). Instead, the court is required to look primarily to the agency's administrative record to provide the factual predicate for the court's review. *Id.*; *see also Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d 23, 36 (D.D.C. 2017).[10]

Under the Supreme Court's recent holding in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling so-called *Chevron* deference), questions of law are now reviewed *de novo* by the courts, without deference to the administrative agency. *See also Mayfield v. U.S.*

---

[10]    An exception to the foregoing principle, among others, is that the Plaintiffs may present affidavits of harm outside the administrative record to satisfy the requirements of standing. *Tex. Med. Ass'n.*, 587 F. Supp. 3d at 538–39 (relying on affidavits to establish plaintiffs' standing). Plaintiffs have done so. Ex. 2– 9. *See also Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *9-10.

*Dep't of Lab.*, No. 23-50724, 2024 WL 4142760, at *4 (5th Cir. Sept. 11, 2024); *Hudson Inst. of Process Rsch. Inc. v. NLRB*, No. 23-60175, 2024 WL 4222177, at *4 (5th Cir. Sept. 18, 2024).

Here, the court is called upon to construe the plain language of the DBA. That text is binding upon the Department. *See District of Columbia v. Dep't of Labor*, 819 F.3d 444, 449 (D.C. Cir. 2016). In addition, agency action reversing longstanding policy is held to be arbitrary and capricious if the agency has "relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983); *see also Abbott v. Biden*, 70 F.4th 817, 826 (5th Cir. 2023).

The agency also acts arbitrarily when it fails adequately to consider reasonable alternatives to the change in policy; and where it fails to consider the reliance interests of the regulated community. *Id. See also Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020); *Encino Motorcars v. Navarro*, 579 U.S. 211, 221-22 (2016). Most recently, the Supreme Court has set aside agency action where the agency failed to adequately address opposing comments in the Administrative Record. *Ohio v. EPA*, 144 S. Ct. 2040, 2053-54 (2024).

## VI.    ARGUMENT

### A.    The Department's Changes to the Wage Determination Process Violate the DBA and the APA'S Arbitrary and Capricious Test

#### 1.    The Department's Re-Definition of "Prevailing Wage" Violates the Plain Language of the DBA

The DBA requires the Department to identify the "prevailing wage" within the civil division where a covered construction project will be performed. 40 U.S.C. §§ 3142, 3145. The word *prevailing* has an established meaning different from that used throughout the new Rule.

Contrary to the Rule, the definition of prevailing used by the Department for the past forty years, accepted by Congress and the courts, means "predominant" and/or "prevalent."[11] Also contrary to the new Rule, this definition was widely used when the term "prevailing" was first incorporated into the DBA in the 1930s.[12] Primarily for this reason, the Department correctly concluded in 1982 that the previous use of the "30 percent rule" to determine prevailing wages violated the DBA's stated intent. *See* 47 Fed. Reg. at 23645.

Under the new standard, the Department will adopt as the prevailing wage any single rate reportedly paid to 30 percent or more of workers in the locality, if no single rate is found for 50 percent of the reported workers. The 30 percent rate by definition captures only a minority of the relevant labor market and imposes a rate that is typically higher than the rates paid to 70 percent of the reported local workforce. The wage determination process adopted in the Rule has also been shown to overrepresent collectively bargained rates. Collectively bargained rates tend to be more uniform because unions often negotiate uniform labor standards with multiple contractors. And by imposing a 30 percent (instead of 50 percent or weighted average) threshold, the Rule rewards union practices. *See* Comp. Gen. Rep. No. HRD 79-18 (April 27, 1979).

Most importantly, the Department's 1982 elimination of the 30 percent modal rule was expressly approved as complying with the DBA's text by an Article III court. *Donovan*, 712 F.2d at 629. Such judicial interpretations are authoritative and binding; they say what the law is. *See Loper Bright*, 144 S. Ct. at 2273; *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1442, 1143 (10th Cir.

---

[11]    *See* Determination of Wage Rates Under the Davis-Bacon & Serv. Cont. Acts, 5 U.S. Op. Off. Legal Counsel 174 (1981); compare Webster's New Twentieth Century Dictionary (1951) (defining *prevailing* as "predominant," "prevalent," and "most common") and American Heritage Dictionary (4th ed. 2001) (same).

[12]    *See, e.g.*, *prevailing*, Merriam-Webster, Webster's Collegiate Dictionary (5th ed. 1936) ("Very generally current; most frequent; predominant"); *prevailing*, Oxford English Dictionary 1334 (1933) ("2. Predominant in extent or amount; most widely occurring or accepted; generally current"). In no sense does it connote something unusual, marginal, or exceptional.

2016). The Department cannot now change the law through regulatory artifice. *See also District of Columbia*, 819 F.3d at 449 (rejecting Department's actions not in accordance with the statutory text of the DBA).

In any event, the Rule is based on the false premise that the accepted definitions of the term "prevailing" approved by the GAO in 1979, the Office of Legal Counsel in 1981, and the DC Circuit in 1983 were all somehow wrong, because they allowed weighted average rates to prevail over modal rates reported by a mere 30 percent of the local workforce. 88 Fed. Reg. at 57538. To the contrary, nothing in the Act precludes use of weighted averages, which by definition are more proximate to the rates paid to the maximum number of employees, compared to an arbitrary 30 percent modal rate that is unrepresentative of the majority of wage rates paid in the area.

## 2.    Reinstating the 30 Percent Rule Is Arbitrary and Capricious

In addition to violating the DBA's plain meaning, the Rule's reinstatement of the 30percent rule must also be found unlawful under the APA because the Department's justifications for reversing decades of policy with regard to the determination of prevailing wages are arbitrary. The Department has "relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, [and] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 41-43; *accord Sierra Club v. U.S. Env. Prot. Agency*, 939 F.3d 649, 663–64 (5th Cir. 2019).

Again, under the new standard, the Department has adopted a rate that by definition captures only a minority of the relevant labor market and imposes a rate that is typically higher than the rates paid to 70 percent of the reported local workforce. The Department never acknowledges this disconnect. But to avoid absurd results, the prevailing rate must must denote a rate that in some sense *predominates*. *See Determination of Wage Rates Under the Davis-Bacon*

15

& *Serv. Cont. Acts*, 5 U.S. Op. Off. Legal Counsel 174 (1981). The Rule also clashes with the Department's own approach to the word *prevailing* in other related contexts, where the Department has defined *prevailing* to look first to an "average" wage. *See* 29 C.F.R. § 656.40(b)(2).[13]

The Department also failed to explain its new standard given the decline in unionization of the construction industry and increasing wage dispersion. Whereas high unionization rates made it more likely that a single wage would be paid to a predominant percentage of the workforce in the 1930's, unionization rates in the construction industry have now fallen to roughly 11 percent nationally. The 30 percent rule has therefore become increasingly likely to produce a wage determination out of step with the wages predominately paid to covered workers. Instead, it is more likely than ever to reflect a collectively bargained rate paid to only a minority of workers— not reflective of the total labor force. *See* Hirsch & Macpherson, *supra*, at 349–54.[14]

In 1982, the Department recognized that the 30 percent rule was no longer producing (if it ever had produced) wage determinations reflecting true prevailing wages. *See* 47 Fed. Reg. at 23645–48. *See also* 46 Fed. Reg. 41444, 41445 (1981). The Department's return to the 30 percent standard in the new Rule fails to address this fundamental aspect of the problem and runs counter to the evidence before the agency, then and now. *See* 88 Fed. Reg. at 57537–38; *Motor Vehicle Mfrs. Ass'n of the U.S, supra.*

The Rule is also arbitrary and capricious because it ignores flaws in the Department's data-collection methodology, and further ignores reasonable alternatives to address the fundamental problems of the 30 percent rule. *See Coalition for Workforce Innovation v. Walsh,* 2022 U.S. Dist.

---

[13]    *See also Prevailing Wages*, https://flag.dol.gov/programs/prevailingwages  (defining *prevailing wage* as the "average wage paid" under the Immigration and Nationality Act).

[14]    The DBA Rule arbitrarily reverses the ruling of its own Administrative Review Board in the case of *Mistick Construction*, ARB No. 04-051, 2006 WL 861357 (Mar. 31, 2006), by declaring now that union rates no longer have to be "uniform" so long as they are "functionally equivalent" (using criteria that are unlikely to apply to non-union workers).

LEXIS 68401, at *7. As explained in greater detail in ABC's rulemaking comments (Ex. 1), the Department determines the wages paid to workers in a given locality based largely on unscientific wage surveys. It distributes wage surveys to area contractors performing private work and asks them to voluntarily report the wages they have paid to their laborers and mechanics in the construction trades. The Department then counts the responses received. *See* 88 Fed. Reg. at 7560–61; U.S. Govt. Accountability Office, Davis–Bacon Act: Methodological Changes Needed to Improve Wage Survey 19 (2011).

Those contractors most likely to respond are the unionized contractors who most heavily rely on wage determinations. *See* ABC Comments at 44–45. This fact helps explain how, even though unionized firms employ fewer than 12 percent of the construction workforce, unionized pay rates determine more than half of all wage determinations.[15]

The Department has ways to solve this problem but has arbitrarily rejected reasonable alternatives. The Department could use wage data from its own Bureau of Labor Statistics, which collects data using more scientific survey procedures. Or it could use statistical sampling or imputing techniques to correct gaps in its data. Or it could adopt one of the other myriad suggestions that commenters, including ABC, urged it to adopt during the regulatory process. The Department chose none of those options, and instead adopted a discredited policy designed to make its determinations *less* representative. *See Ohio*, 144 S. Ct. at 2053–54 (agency must consider and reasonably respond to alternatives raised during public-comment process).

The errors do not end there. Though the Rule refuses to use BLS data to set initial prevailing wages, it announces for the first time a plan to use BLS's Employment Cost Index (ECI) data to

---

[15] *See* James Sherk, Labor Department Can Create Jobs by Calculating Davis–Bacon Rates More Accurately 4 (2017) https://www.heritage.org/sites/default/files/2017-01/BG3185_0.pdf, cited in ABC Comments.

automatically update (increasing) wage rates going forward. In other words, though the Rule asserts that BLS data is inadequate for its initial calculations, it uses BLS data—based on the same underlying sampling and surveying techniques—to *inflate* the data going forward. *See* Fed. Reg. 57573. This is an outcome at odds with the Davis–Bacon Act's plain meaning. *See* 40 U.S.C. § 3142. It is also arbitrary and capricious within the meaning of the APA and settled judicial authority.[16]

### 3. The Department's Conflation of Urban and Rural Rates Violates the DBA and Is Arbitrary and Capricious

The Davis–Bacon Act requires the Department to make wage determinations for each "civil subdivision" of a state. 40 U.S.C. § 3142(b). The Department has long made those determinations at the county level. In addition, since the Reagan reforms of 1982, the Department has recognized that it should not count rural and urban counties together. The reason is simple: urban and rural wage rates tend to differ, with urban rates generally higher. Similarly, contractors in urban counties tend to respond at a higher rate. So if urban and rural counties are combined, urban rates will swamp out rural ones and, more important, inflate rural wage determinations above the wages generally paid to workers in rural counties. 29 C.F.R. § 1.7(b); 47 Fed. Reg. at 23647.

For that reason, in 1982, the Department banned rural-urban combinations. It found that such combinations were "inappropriate" because they would result in inflated and unrepresentative wage determinations. This revision was again upheld by the D.C. Circuit as being consistent with the language of the DBA. *See Donovan*, 712 F.2d at 629. And in the more than four decades since, the Department's rules have maintained that distinction. *See* 29 C.F.R. § 1.7(b); 47 Fed. Reg. at 23647; *Mistick Constr.*, 2006 WL 861357, at *2 (U.S. DOL Admin. Rev. Bd. March 31, 2006).

---

[16] For similar reasons, the Department's new plan to fill gaps in the wage surveys by a greatly expanded conformance process, with little or no data to rely on, constitutes another arbitrary and capricious change in longstanding procedures, without adequate justification. 88 Fed. Reg. at 57592; ABC Comments.

The Rule now abandons that common-sense interpretation of the Act. The Rule fails, however, to square its new policy with the Davis–Bacon Act's plain language. The Act requires the Department to make prevailing wage determinations for each relevant "civil subdivision" of a state. The Department has long applied that term at the county level. But the Department's new approach will allow it to look beyond the county level whenever it deems cross-county comparisons appropriate. In effect, then, the Department has read the "civil subdivision" limitation out of the statute. *See* 88 Fed. Reg. at 57583.[17]

The Rule also fails to justify its new approach in light of the inevitable inflationary effect it will have on rural wage determinations. Higher wage rates and overrepresentation in urban counties will drown out true rural wage rates. Rural contractors will therefore be forced to pay wage rates well above those generally paid in their localities. The result will be not to protect local wage rates, as the Davis–Bacon Act intended, but to inflate those rates to match (or even exceed) neighboring—or even remote—rates.

**B.    The Rule Unlawfully and Arbitrarily Expands the DBA'S Coverage and Penalties**

**1.    The Rule's Imposition of Coverage by "Operation of Law" Violates the DBA**

The DBA ties its coverage specifically to qualifying contracts. It requires agencies to incorporate certain specifications in all qualifying construction contracts. 40 U.S.C. § 3142(c). It covers contractors and workers only when they perform work under a covered contract. 40 U.S.C. § 3142.

---

[17] To the extent the new DBA Rule allows the Department to import rates from beyond surrounding counties, i.e., statewide, the Rule again violates the plain language of the DBA, which requires rates to be prevailing in the civil subdivision. 40 U.S.C. § 3142.

For that reason, the Department has long applied the Act to a contractor or subcontractor only when the applicable contract and/or subcontract contains the required DBA specifications. That is, a contractor must pay the prevailing wage only when the contract and advertised specifications require it to pay that wage. If the specifications are omitted, they are ineffective. *See* Op. No. B-144901, 40 Comp. Gen. 565, 570, 1961 WL 1636, at *6 (Apr. 10, 1961) ("The conditions established by the [Davis–Bacon] Act are effective only when, as expressly directed, they are included in the 'advertised specifications.'"). This notice problem has been exacerbated in recent years by the proliferation of "related" acts, noted above at p. 3, n.2, imposing Davis-Bacon requirements on federally funded construction projects authorized by other statutes.

The DBA Rule departs from the statute by imposing DBA coverage as a matter of law. Even if the construction contract omits the relevant specifications, the Rule holds the contractor liable. 88 Fed. Reg. at 57662. Because this aspect of the DBA Rule again contradicts the plain language of the DBA, which conditions coverage on contractual specifications, it exceeds the Department's authority and violates the Act. The Northern District of Texas recently so held in *Associated Gen. Cont's of Am.*, 2024 WL 3635540, at *12-13, issuing a nationwide injunction that is binding on this court and others nationwide while an appeal is pending. *See Univ. Research Ass'n v. Coutu,* 450 U.S. 754, 784 n.38 (1981) (declaring that the DBA is "not self-implementing").[18]

Relatedly, the Rule redefines and expands the scope of the Act's coverage of "prime contractors" to include corporate affiliates without regard to indicia of control; and arbitrarily

---

[18] In the preamble to the Rule, the Department relied on inapposite court rulings under different laws applying the so-called *Christian* doctrine. *G.L. Christian & Assoc. v. United States*, 312 F.2d 418 (Ct. Cl. 1963). As numerous commenters explained, that doctrine has no application to the DBA. *See* ABC Comments at 47; SBA Comments at 11; Wiley Rein Comments, discussed but ultimately ignored by the Department. 88 Fed. Reg. at 57663–64.

changes the debarment standard that had been in place since 1950 so as to remove the "willful and aggravated" test for the 70+ Related Acts without statutory authorization. ABC Comments at 48. The Rule further authorizes "cross-withholding" (without contractual or statutory authorization) of back wages allegedly owed on a different project from that which the prime contractor allegedly owes such wages, without benefit of due process. *See* Fed. Reg. at 57688–89. These provisions also violate the Act and decades of Department policy. *See Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *12–13 (holding that Rule's operation-of-law provision violated plain meaning of DBA).

### 2.    The Department's Rule Unlawfully Expands the Scope of the DBA's Coverage Beyond "Construction" Performed by "Laborers and Mechanics" on the "Site of the Work"

While broad, the DBA limits its own coverage in several ways. For one, it applies only to employees at the "site of the work." But the Rule violates this statutory limitation. The Rule purports to cover off-site facilities when those facilities are dedicated "entirely, or nearly entirely, to the construction of one or more 'significant portions' of a particular public building or work." 88 Fed. Reg. at 57732. The Department's expansions ignore the statutory limits. They also ignore repeated and authoritative judicial interpretations.

Courts have repeatedly rejected the Department's efforts to stretch the Act to cover new kinds of work in the past. Those efforts, like the Rule, departed from the Act's plain words. And for that reason, courts rejected them. *See, e.g.*, *District of Columbia*, 819 F.3d 444; *L.P. Cavett Co. v. U.S. Dep't of Labor*, 101 F.3d 1111 (6th Cir. 1996); *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447 (D.C. Cir. 1994); *Bldg. & Const. Trades Dep't AFL-CIO v. U.S. Dep't of Labor Wage Appeals Bd. (Midway)*, 932 F.2d 985 (D.C. Cir. 1991). Because the Rule seeks to extend coverage to workers and types of work excluded by the DBA's plain terms, it exceeds the Department's authority and violates the Act.

Moreover, in expanding the prevailing wage requirements beyond the construction worksite, the Department has also acted in an arbitrary and capricious manner by expanding coverage to workers and/or activities that have been previously found by the Department and/or the courts not to be covered construction site "laborers and mechanics," including certain surveyors, flaggers, truck drivers, and material suppliers. The Rule also pushes the Act's coverage down the supply chain, roping in certain prefabrication work performed off site, which courts have previously rejected. *See* 88 Fed. Reg. at 57615, 57621–25, 57708, 57732.

The Rule also expands coverage to include workers located off-site, such as certain flaggers. Flaggers are workers who, among other things, control traffic by directing other workers and vehicles. The Rule asserts that these workers are covered even when they work away from the principal construction site—in particular, when they work at a "location adjacent or virtually adjacent to the primary construction site." 88 Fed. Reg. at 57620. That expansion clashes with the Davis–Bacon Act's plain words, which again, limit coverage to the site of the work. It also clashes with well-established judicial precedent, which has rejected prior attempts to push coverage beyond the worksite. *See* 40 U.S.C. § 3142; *Midway*, 932 F.2d at 992; *Ball*, 24 F.3d at 1452–53; *L.P. Cavett*, 101 F.3d at 1115.

For similar reasons, the Rule's expansion of the Act's coverage to truck drivers, coupled with the arbitrary expansion of the definition of "construction" to include "transportation," cannot stand. Numerous court decisions have held to the contrary: truck drivers are not employed at the site of the work. *Midway*, 932 F.2d at 991; *Ball, Ball & Brosamer*, 24 F.3d at 1452; and *H.B. Zachry v. United States*, 344 F.2d 352, 361 (Ct. Cl. 1965); *Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *13-14 (preliminarily enjoining the site of the work provision nationwide).

22

The Rule likewise expands coverage to include certain materials suppliers previously considered exempt from DBA's coverage. That is, material-supply workers who spend less than 20 percent of their time on ancillary or incidental tasks have long been exempt. The Rule acknowledges that the 20 percent rule is well known to and understood by the regulated community. Even so, the Rule abandons the standard for a supposed "bright line" test. This new test will exempt a material supplier only when the supplier's "only obligations for work on the contract or project are the delivery of materials, articles, supplies, or equipment." Likewise, the supplier's facilities must be located away from the construction site and be (a) established before opening bids for the contract, or (b) supply projects other projects at the same time. The Rule offers no rational justification for this expansion. *See* 88 Fed. Reg. at 57623; *Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *14 (holding that the Rule's material-supplier expansion contradicts plain meaning of DBA and enjoining it).

Similarly, the Rule arbitrarily extends coverage to most surveyors, except for those with professional licenses, departing from rulings over the past 50 years that members of survey crews are not "laborers or mechanics" covered by the Act. See ABC Comments at 9.[19] The Department claims that the Rule's new approach to surveyors merely codifies prior guidance. 88 Fed. Reg. at 57614. But under prior policy and practice, the Department did *not* consider surveyors to be laborers or mechanics when they performed surveying tasks such as holding leveling staffs, measuring distance with a survey chain or other device, or reading and adjusting measurement instruments, as reflected in the Department's own Field Operations Handbook § 15e20(b) (Eff.

---

[19] *See also* AR Comments of the National Society of Prof. Surveyors (May 17, 2022) and the Ill. Road & Transp. Builders Ass'n (May 14, 2022), available at https://www.regulations.gov/comment/WHD-2022-0001-40894.

2016).[20] The Department has thus made a significant change without acknowledging it, in violation of *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . depart from a prior policy *sub silentio* . . . ."); *Wages & White Lion Invs., L.L.C. v. Food & Drug Admin.*, 90 F.4th 357, 381 (5th Cir.) (quoting *Fox Television*), *cert. granted,* 144 S. Ct. 2714 (2024). And it has expanded the definition of "laborer" and "mechanic" beyond its plain and longstanding meaning.

### C.    The Rule Imposes Restrictive and Discriminatory Treatment of Non-Union Fringe Benefit Plans

In addition to inflating wage determinations, the Rule also raises direct benefit costs for non-union contractors. The Rule amends Section 5.28 to expressly require non-union contractors to obtain the Wage Hour Administrator's approval of so-called "self-funded" insurance plans. Such insurance plans are common among the non-union majority of contractors, including Plaintiffs' members; indeed, it has been estimated that 60 percent of contractors use self-funded insurance plans to provide this bona fide fringe benefit to their employees. 88 Fed. Reg. at 57650. The Department makes no claim that such plans are any less "bona fide" than union benefit trusts which are used by only a small percentage of the industry. Nevertheless, the Department has declared self-funded plans will receive no credit as bona fide fringe benefits unless and until the Department approves them, an expensive and time-consuming process.

In addition, the Department has changed the principle called "annualization," by which the Department reduces the credit non-union Davis–Bacon contractors receive for fringe benefits according to the proportion of time a worker spends on private, non-Davis–Bacon work. *See* 88 Fed. Reg. at 57644–45. Now, the Department will exempt from annualization only those fringe

---

[20] *See* DOL Field Operations Handbook § 15e20(b), <u>Field Operations Handbook - Chapter 15 | U.S. Department of Labor</u> (last visited 10/29/2024).

benefits that are "non-continuous" in nature. *See* 88 Fed. Reg. at 57644–45. Again, this new Rule discriminates against non-union fringe benefit plans, since "continuous" union fringe benefit plans are not "annualized."

These fringe benefit requirements are new, burdensome, and unjustified. They will only increase administrative costs and discourage contractors from offering certain fringe benefits. That effect, in turn, will exacerbate the problems the Department says it is trying to address.

### D.    The Rule Violates the Regulatory Flexibility Act and the APA

The Regulatory Flexibility Act, 5 U.S.C. §§ 601 *et seq.*, requires that agencies issuing rules under the Administrative Procedure Act must publish a final regulatory flexibility analysis assessing the negative impact of the rule on small businesses and to consider less burdensome alternatives. This analysis also requires the agency to respond to "any comments filed by the Chief Counsel for Advocacy of the Small Business Administration in response to the proposed rule." 5 U.S.C. § 604(a)(3). The final regulatory analysis must "demonstrate a 'reasonable, good-faith effort' to fulfill [the Regulatory Flexibility Act's] requirements." *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88–89 (D.C. Cir. 2001); *see also Associated Fisheries of Me., Inc. v. Doley*, 127 F.3d 104, 114 (1st Cir. 1997). The Northern District court found a substantial likelihood that the Department's rulemaking violated the RFA and preliminarily enjoined the Rule on that basis. *Associated General Cont.'s*, 2024 WL 3635540, at *13–14.

The Rule fails to satisfy those requirements in several ways. For one, it fails to provide a reasoned explanation of its assessment of several significant economic issues raised in public comments. The Department received evidence that it severely underestimated the amount of time company officials will have to spend reviewing and understanding the 800-page rulemaking. The Department ignored evidence that contractors cannot comply with the Rule's new and complex provisions without extensive involvement and retraining of many departments outside human

25

resources. The affected aspects of construction contracting directly impacted by the Rule include payroll, estimating, contracts, legal, operations, supervision, corporate risk management, and executive management in general. The Department failed to consider or address the impact on any of these areas of concern to small businesses.[21]

Without addressing these concerns on the merits, the Department has simply assumed that some affected parties will henceforth cease participating in public contracting entirely.[22] This conclusion is astonishing. It asserts, in effect, that the Department can ignore costs to small businesses simply by making its rules too complex for small businesses to understand. The Department's conclusion is not only arbitrary and capricious, but violates the letter and spirit of the Regulatory Flexibility Act. *See Ohio*, 144 S. Ct. at 2055 (agency cannot "sidestep" significant comments but must instead address them directly).

The Rule also violates the Regulatory Flexibility Act by failing to properly respond to the comments filed by the Small Business Administration (SBA) in response to the proposed rule as required under 5 U.S.C. § 604(a)(3). On May 17, 2022, the SBA's Office of Advocacy, an independent office within the SBA, submitted public comments on the Proposed Rule stating the Department's analysis was "deficient."[23] *See Associated Gen. Contractors of Am.*, 2024 WL 3635540, at *15-16 (holding that Department violated the RFA by, among other things, failing to adequately respond to SBA's concerns).

---

[21] The Rule arbitrarily concludes that a single human resources staff member would only need to spend 4 hours to review and understand the 250,000-word Rule, and makes no effort to determine the time and cost needed for each employer's lawyers, payroll, and operations personnel to become conversant with the Rule's vast changes to the DBA.

[22] *See* 88 Fed. Reg. at 57705 (stating that "because some of the firms in the cost calculation will not bid on a Davis-Bacon contract and therefore will not spend any time reviewing [the 800-page final rule]" an estimate of 4 hours is "more appropriate").

[23] SBA's Office of Advocacy Public Comments Updating the Davis-Bacon and Related Acts Regulations, 87 Fed. Reg. 15698 (March 18, 2022), https://www.regulations.gov/comment/WHD-2022-0001-40925 (attached as Exhibit 8).

SBA's Office of Advocacy concluded that the Proposed Rule failed in at least three ways. First, it undercounted the number of small businesses affected by the proposal. Second, it "severely underestimated the administrative burdens and compliance costs of this rule for small businesses." Third, it failed to examine less burdensome alternatives. The Rule responds to none of these criticisms. By failing to provide a reasoned response, the Rule violates the Regulatory Flexibility Act and the APA. *See* 5 U.S.C. §§ 604(a)(3), 706(2)(A). *See also Ohio*, 144 S. Ct. at 2053–54; *Doley*, 127 F.3d at 114.

### E.    The Rule's Unlawful Provisions Cannot be Severed

The Rule is an effort (self-described by the Department) to "comprehensively" redesign the way the Department determines, implements, and enforces prevailing wages under the Davis-Bacon and related acts.[24] Each part of the Rule contributes to the same final product: an arbitrary process for determining prevailing wages violating the DBA, and an enforcement process designed to impose unfair burdens and risks on merit contractors. So the Rule is non-severable and should be set aside in its entirety.

Under the APA, when invalid parts of a rule are woven into a comprehensive regulatory plan or scheme, such that the remaining parts are incapable of "independent life," a court will set aside the entire rule. *See Texas v. Becerra*, No. 5:21-CV-300-H, 2023 WL 2754350, at *32 (N.D. Tex. Mar. 31, 2023). Here, the Rule's invalid provisions are part of such a comprehensive scheme. The changes work in tandem and cannot be logically separated from each other or the remaining parts of the rule, all of which aim at the same or similar result. Setting aside the Rule is the standard remedy in this Circuit. *Becerra*, 2023 WL 2754350, at *32 (setting aside final rule); *Chamber of Comm. of United States v. United States Dep't of Lab.*, 885 F.3d 360, 388 (5th Cir. 2018) (same);

---

[24] 88 Fed. Reg. 57694 ("[T]he Department notes that this is the first comprehensive update of the DBRA regulations in four decades, and as such covers a wide range of diverse topics.").

*Nio v. United States*, 385 F. Supp. 3d 44, 68–69 (D.D.C. 2019) ("Generally, when a court finds that a challenged action is arbitrary and capricious, the remedy is vacatur.").

**F.    Acting Secretary Su's Indefinite Appointment as Acting Secretary of Labor Violates the Appointments Clause of the Constitution**

Article II of the U.S. Constitution empowers the President to appoint "Officers of the United States," only with the advice and consent of the U.S. Senate. *See* U.S. Const. art. II § 2. This is no mere formality; it is a foundational pillar in the Constitution's scheme for protecting private liberty. *See* The Federalist No. 76 (A. Hamilton); *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1124 (D. Mont. 2020). For that reason, courts have never allowed the President to circumvent the requirement by appointing such officials indefinitely. *See Bullock*, 489 F. Supp. 3d at 1126. *See also Noel Canning v. NLRB*, 573 U.S. 513, 522 (2014) (recognizing only two methods of appointment—advice/consent and recess appointments). The Secretary of Labor may be appointed only with the advice and consent of the Senate.

On Feb. 28, 2023, President Biden nominated Deputy Secretary of Labor Julie Su to become the Secretary.[25] Since her nomination, however, it has become clear that Su will not receive the Senate's consent. She has acted as the Secretary for more than seven months without receiving a vote, and the Senate recently returned the nomination to the President without approval.[26] But the President has left Su to run the Department as Acting Secretary without the Senate's consent.[27]

The Administration claims statutory authorization to allow the Deputy Secretary to exercise the Secretary's powers indefinitely under a statute, 29 U.S.C. § 552, and a GAO Opinion

---

[25] https://www.whitehouse.gov/briefing-room/statements-releases/2023/02/28/president-biden-nominates-julie-su-for-secretary-of-the-department-of-labor/
[26] "Labor Secretary Nom Returns To Biden After Senate Delay" Employment Law360 <news-alt@law360.com>
[27] https://www.help.senate.gov/imo/media/doc/julie_su_nomination_letter1.pdf.

asserting that the statute has been complied with.[28] But the GAO did not address the question presented here, which is whether the *Constitution* permits such an indefinite appointment without Senate confirmation. By its plain language, the Constitution does not permit Su to serve as Acting Secretary indefinitely without such Senate approval.

The Rule was issued under Su's purported authority. 88 Fed. Reg. at 57746. Because she had no such authority, the Rule is invalid. *See Lucia v. SEC*, 585 U.S. 237, 251 (2018) (actions by invalidly appointed official void); *Bullock*, 489 F. Supp. 3d at 1130 (granting declaratory and injunctive relief against agency actions taken under acting official improperly put in office without the advice and consent of the Senate); 5 U.S.C. § 706(2)(B) (requiring a court to set aside final agency action that violates the Constitution).

## V.    CONCLUSION

For all the reasons set forth above, Plaintiffs ask that their motion for summary judgment be granted and that the Court enter an order setting aside the Rule in its entirety and permanently enjoining its enforcement.

---

[28] GAO Opinion Letter at 4-5.

Dated: November 1, 2024

Respectfully submitted,

  /s/ A. John Harper, III
John Harper, III
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
(713) 951-9400
ajharper@littler.com

Maurice Baskin (*pro hac vice*)
Alex MacDonald (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
amacdonald@littler.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2024, the foregoing Motion for Summary Judgment

was electronically filed with the Clerk of the Court, using the ECF system, thereby sending

notification of such filing to counsel for Defendants:

      Cynthia Liao
      Arjun Mody
      Trial Attorneys
      U.S. Department of Justice
      Civil Division, Federal Programs Branch
      1100 L St., N.W.
      Washington, D.C. 20005
      Cynthia.F.Liao@usdoj.gov
      Arjun.a.mody@usdoj.gov

                        /s/Maurice Baskin_____