# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

| | | |
|---|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS; AND ASSOCIATED BUILDERS AND CONTRACTORS, INC.,<br><br>　　　Plaintiffs<br><br>　　vs.<br><br>JULIE SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, in her official capacity, JESSICA LOOMAN, ADMINISTRATOR, DIVISION OF WAGE AND HOUR, U.S. DEPARTMENT OF LABOR, in her official capacity, and UNITED STATES DEPARTMENT OF LABOR,<br><br>　　　Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 23-CV-00396-MJT<br><br>DECLARATION IN SUPPORT OF PLAINTIFFS' COMPLAINT |

I, Ben Brubeck, being duly sworn, hereby state the following based on personal knowledge:

　　1.　　I am the Vice President of Regulatory, Labor, and State Affairs of the Associated Builders and Contractors, Inc. (ABC). ABC is a trade association representing more than 22,000 member contractors and related firms in Texas and throughout the country. ABC has 68 chapters and represents all specialties within the U.S. construction industry. It comprises firms that perform work in all industry sectors, including government contracting.

　　2.　　I submit this Declaration in Support of Plaintiffs' Complaint, which is incorporated by reference, in order to help establish ABC's standing to sue the Department in order to block enforcement of the Rule entitled "Updating the Davis-Bacon and Related Acts," 88 Fed. Reg. 57526 (Aug. 23, 2023) (hereafter the "DBA Rule"). Also incorporated are ABC's

May 17, 2022 comments filed in opposition to the proposed DBA Rule, which are attached to Plaintiffs' Complaint.

3. One of ABC's primary missions is to preserve fair and open competition on government construction projects, regardless of labor affiliation. ABC members won 53% of the $165.6 billion in direct prime construction contracts exceeding $25 million awarded by federal agencies nationwide during fiscal years 2009 through 2023, all covered by the DBA. ABC members also build in Texas and throughout the country federally assisted projects covered by one or more Related Acts that incorporate the DBA. ABC's members also provide subcontracting opportunities to large and small contractors in the specialty trades, many of whom are themselves ABC members, to deliver taxpayer-funded construction projects covered by the DBA.

4. The challenged actions of the Department have frustrated Plaintiffs' organizational mission. The Department's actions have also caused, and will cause, ABC and its Southeast Texas chapter to divert their resources to combat the Department's improper redefinition of the term "prevailing wages" and other erroneous, arbitrary, and capricious changes to the implementation of the Davis–Bacon Act.

5. Again, part of ABC's mission is to advocate for its members in the regulatory process. As part of that advocacy work, ABC has spent thousands of dollars in staff time and attorneys' fees to track and respond to the false, incomplete, and irrational claims in the Department's initial proposed revisions, published on March 18, 2022.

6. ABC prepared and filed thorough regulatory comments, running to 67 single-spaced pages. These comments included extensive legal, economic, and practical input from

ABC staff and ABC member firms, as well as information from outside experts commissioned by ABC to respond to the Department's proposals.

7.  ABC has since spent thousands of dollars responding to the Department's final DBA Rule, published in the Federal Register on August 23, 2023. ABC has invested hundreds of staff hours studying the rules and informing its members about the rules' contents. It has also fielded calls from members and their government and private industry customers concerned about the rules' effects and legal basis.

8.  Today, ABC continues to expend significant resources assisting members that are performing DBA-covered work in Texas and elsewhere. As a direct result of the new Rule, ABC will have to continue spending money and staff time on, among other things, regulatory analysis, written guidance, phone calls, and other informational and educational efforts for its members and the broader construction industry.

9.  In addition to the foregoing direct injuries to ABC and its Southeast Texas chapter as an organization, if the Department's new Rule stays in effect as written, the Rule will harm ABC's members in Southeast Texas and across the country, who ABC represents as an association. ABC and its chapter well-satisfy the three-part test set forth in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) The members of ABC and ABC SETX would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

10. To begin with, ABC's members will be required to incur increased administrative costs and burdens related to the new DBA rule, which will undermine their economy and

3

efficiency on public and private construction projects in Texas and throughout the country subject to the DBA. Such costs of compliance are largely non-reimbursable.

11. In part, the increased administrative costs and burdens will result from the DBA Rule's changes to the wage setting process that will cause the Department to disproportionately adopt collectively bargained wage rates as the prevailing wage rates for construction contracts subject to the Davis-Bacon Act, even though only 11.7% of the U.S. construction industry is unionized, according to 2023 Bureau of Labor Statistics data.

12. When union wage rates are adopted by the Department as prevailing, the Department requires that union work rules and job classifications must also be followed. Both will give unionized firms a cost advantage when competing for construction projects subject to Davis-Bacon Act requirements. In addition, the rules will impose greater risks than ever on ABC's members because they are often unable to determine the proper job classifications and union work rules on projects where union wage rates are found to be prevailing. This is so because the Department's "Fry Brothers" rule remains in place, requiring adoption of unpublished and hidden union work rules and union job classifications contained in union collective bargaining agreements, with which merit shop contractors are unfamiliar.

13. The Department's rules will also harm ABC and its members by expanding the DBA's coverage to activities previously exempt from the Act's requirements. Those activities include off-site activities such as fabricating materials and components that are used in construction. They also include transportation between certain worksites, as well as certain flagging and surveying activities. When conducting those activities before, ABC's members did not have to follow Davis–Bacon standards, including the prevailing-wage standard, in almost all

circumstances. The Department's new regulations will now force them to do so, requiring them to spend more in wages and benefits, and un-reimbursable administrative costs.

14. ABC's members will also incur additional compliance costs because the rules will impute statutory coverage even when a contractor has no notice that it must comply with DBA regulations. Under current law, the DBA applies only when the advertised solicitation includes certain specifications, such as a specification that the contractor must pay a certain prevailing wage. But under the Department's new rules, coverage is imposed as a matter of law. As a result, ABC's members may have no prior notice that they must pay prevailing wages on a particular contract. They will therefore have to invest more time and money on the front end to determine whether a contract is covered: they can no longer rely on the specifications alone. And if they make a mistake on that point, they could face new monetary liability, including liability for unpaid prevailing wages. They might even face debarment.

15. The DBA Rule also imposes discriminatory and costly new fringe benefit approval and annualization requirements on ABC members that do not apply to unionized fringe benefits, again directly harming ABC members in Texas and nationwide.

16. The DOL's assumption that it costs every business merely $225 for only one person to read and familiarize themselves with the new 800-plus page Final Rule is shockingly understated. The Final Rule is nearly 250,000 words, which would take almost 18 hours for the average American reader, at 238 words per minute, to finish. In addition, the new rule is likely to require many small businesses to hire costly labor lawyers, at significantly more than $50 an hour, to review and provide compliance recommendations. Likewise, the rulemaking does not account for the time it takes small businesses to understand and operationalize the new rule.

17. Of note, the regulation is just as time-consuming and onerous for larger contractors, as the rule does not estimate costs to familiarize and operationalize changes companywide, which requires

5

HR, payroll, estimators, managers and forepersons to understand the changes as well. It is clear that the DOL regulators are vastly underestimating the regulatory costs of this new rulemaking.

18.  As discussed above, the injuries caused by the DBA Rule are germane to ABC's organizational purposes of ensuring fair and open competition in the construction industry, without discrimination based on union status.

19.  Lastly, neither the claims asserted nor the relief requested require the participation of ABC's individual members, because the case is being brought as a matter of law and the Administrative Record to challenge the DBA Rule based on its violation of the plain language of the DBA's text and its arbitrary and capricious departures from longstanding policies regarding the meaning and enforcement of the DBA.

20.  The foregoing is not an exclusive list of the direct harms to ABC and its members caused by the new rule(s). Reference is made to Plaintiffs' complaint which provides additional detail regarding the unlawful rules and their impact on the construction industry, together with ABC's Comments on the proposed rule, and additional comments and ABC-member affidavits attached to ABC's Motion for Summary Judgment.

I declare under penalty of perjury that the foregoing is true and correct.

_____        12/19/2023
Ben Brubeck                              Date