# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Associated Builders and Contractors Southeast Texas Chapter, et al., <br><br> v. <br><br> Julie Su, Acting Secretary, United States Department of Labor, et al | Case No. 23-cv-00396-MJT <br><br> **DECLARATION IN SUPPORT OF PLAINTIFFS' COMPLAINT** |

I, Milton Graugnard, being duly sworn, hereby state the following based on personal knowledge:

    1.    I am the Executive Vice President of Cajun Industries Holdings, LLC, ("Cajun"), a nationally recognized construction leader providing fully integrated self-performed EPC (Engineering, Procurement, and Construction) services to some of the largest and most renowned companies in the world, and to the federal government. Cajun performs work throughout the United States with a core geographic market along the Gulf Coast.

    2.    Cajun is a member of Associated Builders and Contractors ("ABC") national trade association and multiple chapters of ABC. I personally serve as the volunteer Chair of the national association until December 31, 2023, and effective January 1, 2024 I will serve as Past Chair and member of the Executive Committee.

    3.    I am familiar with Cajun's performance of construction work on government-funded projects covered by the Davis-Bacon Act in Texas and elsewhere. Cajun has regularly performed such work for a number of federal agencies, including the Army Corps of Engineers. We are reconsidering whether to continue performing such work, however, because of the rule changes recently adopted by the U.S. Department of Labor. We have been advised of a number

of forthcoming solicitations by the Army for construction projects of the type Cajun would normally bid for and perform. These are sizable projects that require months of advance planning prior to bidding, employing hundreds of employees, and typically call upon Cajun to enter into joint ventures with minority small businesses.

4. As described in greater detail in ABC's previously filed complaint challenging the new Rule, the recent changes have a direct and negative impact on our business in a number of ways. The Rule changes all appear to be designed to make it more likely that union scale wage rates will be found prevailing, when we know that is not true. The new rules also expand the geographic scope of the Act's coverage beyond the statutory "site of the work", expand the types of workers who will be covered, and increase the administrative burdens on contractors. Most if not all of these changes will be harmful to Cajun's ability to perform projects covered by the Davis-Bacon Act wage requirements.

5. The most immediate harm to our company is the extra administrative costs and risks confronting our efforts to understand the new rules, which are hundreds of pages long and affect every aspect of Davis-Bacon compliance. We will have to hire additional (unreimbursed) staff for training and compliance purposes. In addition, the minority and small business partners who we would need to engage with will face similar administrative costs and risks, with even fewer resources at their disposal to address the Rule changes.

6. In addition, because the new rules make it more likely that union wage rates will be found to prevail, our company, and our small business partners and subcontractors, will often be required to change our work practices to abide by union classification requirements, which we and our partners and subcontractors often do not know about and do not have access to. This will

undermine our productivity and our previously successful business model for the most efficient use of skilled labor.

    7.    As merit shop contractors, Cajun and our partners and subcontractors are at greater risk of being found to have misclassified workers because of the Department's Rule. The more union rates that are found to prevail under the new Rule, the greater our risk. The Department's wage determinations are notorious for lacking adequate job descriptions and other practical guidance for compliance with the wage and fringe benefit determinations.

    8.    The increased number of inflated wage rates found to be prevailing under the new Rule also harms Cajun, our partners, and subcontractors, because of the destabilizing impact of such rates on our workforce, which is paid at competitive market rates on private work but has to be paid the inflated rates on government work.

    9.    Due to the harms and risks discussed above, Cajun will be adversely impacted in its ability to find subcontractors willing to perform Davis-Bacon work, and we will confront additional expenses in monitoring and ensuring subcontractor compliance, and additional penalties for the subcontractors more likely inability to comply.

    10.    I declare under penalty of perjury that the foregoing is true and correct.

_____       12/4/23
Milton Graugnard                    Date

Case 1:23-cv-00396-MJT     Document 32-5     Filed 11/01/24     Page 5 of 5 PageID #:  541